MICHAEL J. TRACY, an individual and
Derivatively as a shareholder of Telemetrix
and Convey;

                    Plaintiff,

        vs.

TELEMETRIX, Inc.;  et al.,

                    Defendants.

**8:12CV359**

**MEMORANDUM AND ORDER**

This matter is before the court on the following motions:

| | |
|---|---|
| Filing No. 255: | Plaintiff's Motion for Sanctions against all defendants; |
| Filing No. 260: | Plaintiff's Motion for Leave to File Third Amended Complaint; |
| Filing No. 276: | Motion to Compel Defendants Larry Becker, Becker Capital Management, LLC, Green Eagle Networks, Inc., and Green Eagle Communications, Inc. (collectively "the Green Eagle Defendants"); |
| Filing No. 277: | Motion to Compel Defendants William Becker, Gary Brown, and Telemetrix, Inc. (collectively "the Telemetrix Defendants"); |
| Filing Nos. 259, 279, 283: | Plaintiff's Motions to Restrict certain exhibits and other filings; |
| Filing No. 296: | Defendants' Motion to Restrict certain exhibits. |

The parties long and contentious history of litigation, albeit in different forms, apparently began in 2004. Shortly thereafter, a 2004 Telemetrix Shareholder's Agreement was executed – the result of litigation with creditors of Telemetrix. Pursuant to the Shareholder's Agreement, Plaintiff lost control of Telemetrix and became a minority

shareholder.  Since assuming this status, Tracy has alleged various acts of malfeasance on the part of the controlling shareholders.

The suit now before the court involves various loans and the transfer of Telemetrix assets, including its FCC broadcasting license.  Plaintiff brings claims against all Defendants both individually and derivatively on behalf of Telemetrix.  The crux of the case is based on allegations that Defendants mismanaged and defrauded Telemetrix for the benefit of the individual defendants and the Defendant companies.

The parties' pending discovery disputes are addressed below.

ANALYSIS

A.      Motion to Amend (Filing No. 260)

This case was removed from the District Court for Scotts Bluff County, Nebraska on October 8, 2012.  (Filing No. 1).  Putative Defendant Gayle Becker was named in the original complaint.  Plaintiff filed an amended complaint on November 13, 2012, (Filing No. 29), and a second amended complaint on November 28, 2012, (Filing No. 37).  Defendants Gayle Becker, Larry Becker, Becker Capital Management, Green Eagle Communications and Green Eagle Networks filed a motion to dismiss on December 7, 2012, (Filing No. 50). Likewise, Defendants William W. Becker, Gary Brown, Convey Communications, and Telemetrix filed a motion to dismiss that same day.  (Filing No. 52).

By order entered on April 11, 2013, the Hon. Richard G. Kopf held Plaintiff had not properly pleaded claims pursuant to the Racketeer Influenced and Corrupt Organizations ("RICO") Act.  (Filing No. 117).  Specifically, he found Plaintiff "failed to plead mail or wire fraud as predicate acts . . . [and] failed to sufficiently plead a RICO 'enterprise,' 'a

pattern' of racketeering acts, a RICO conspiracy, and that his injuries were proximately caused by defendants' racketeering activity." (Filing No. 117 at CM/ECF p. 16). The court afforded Plaintiff the opportunity to file another amended complaint in an attempt to cure the defects in his operative complaint, and it denied Defendants' Motions to Dismiss without prejudice to reassertion.

In response, Plaintiff filed its Amended Complaint (Second) on June 7, 2013, (Filing No. 122). In it, Plaintiff voluntarily dismissed several defendants including Gayle Becker.[1] Defendants again moved to dismiss the complaint for failure to plead fraud with the requisite particularity. Those motions were denied. (Filing No. 148).

The parties completed a Rule 26(f) report and the Final Progression Order was entered on September 24, 2014. (Filing No. 166). Pursuant to the Progression Order, the deadline for moving to amend or add parties was December 19, 2014. (Id.). Discovery was to close by April 17, 2015. The discovery dates have been continued, but the motion to amend deadline has not. The parties completed initial disclosures in October of 2014, and Plaintiff served his first set of Requests for Production on November 26, 2014. (Filing No. 170). Within a few months, the parties' discovery disputes began. (Filing Nos. 186 & 189). Plaintiff received at least partial responses to the requested discovery intermittently from February of 2015 until August of 2015. (Filing Nos. 210, 219, 223, 233, 238, 240, & 241). Defendants have apparently produced several thousand pages of documents, many of which Plaintiff did not receive until July and August of 2015. Plaintiff filed a motion for leave to file a third amended complaint on August 7, 2015. (Filing No. 243). That motion was then amended and the current motion for leave to file an amended complaint was filed on

_____

[1] The pending motion to amend seeks to again name Gayle Becker as a defendant.

September 4, 2015, (Filing No. 260), well after the deadline set forth in the Final Progression Order.

Pursuant to Rule 16(b)(4), a case management order setting progression deadlines "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The movant's level of diligence and the degree of prejudice to the parties are both factors to consider when assessing if good cause warrants extending a case management deadline, with the movant's diligence being the first consideration and the extent of prejudice to either party considered only following a requisite threshold finding of due diligence. Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 716-17 (8th Cir. 2008); Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 759 (8th Cir. 2006). Where there is "no change in the law, no newly discovered facts, or any other changed circumstance" the court will generally not find good cause to amend. Id.

Plaintiff seeks to amend his complaint to add parties Gayle Becker, Diane Larkowski, and Mitchell Bennett. Gayle Becker is the wife of Larry Becker and Plaintiff asserts she "is integral in assisting Larry in the operation and administration of Defendant Green Eagle." (Filing No. 243, ¶22 at CM/ECF pp. 5-6). Larkowski allegedly "was the accountant for Becker Capital Management and Telemetrix from no later than 2005 through June 2008." (Filing No. 243, ¶16 at CM/ECF p. 4). Bennett was allegedly the president of Telemetrix from June 2008 through January 2011. (Id.). In support of its motion, Plaintiff filed its proposed Amended Complaint and supporting index of evidence containing fifty-six (56) new exhibits, the majority of which are emails or other documents that were solely in the possession of Defendants and produced during the discovery process.

Defendants argue Plaintiff has not made the necessary showing of good cause for filing a motion to amend over eight months after the expiration of the deadline set forth in the Final Progression Order. Defendants assert Plaintiff has not worked diligently to comply

with the case progression deadlines or to seek relief from the court to extend the deadlines. That is, Defendants assert Plaintiff should have moved for a continuance of the motion to amend deadline due to the continued discovery deadlines in light of Plaintiff's admitted suspicions about the proposed new defendants' roles in the alleged conspiracy and racketeering activity.

Plaintiff asserts he has been diligent in pursuing and reviewing discovery. Citing to the court's previous dismissal of his complaint for failure to plead the requisite specificity, Plaintiff argues he waited to add parties until he could, in good faith, assert causes of action against them. He further argues Defendants produced thousands of pages of documents incrementally, requiring Plaintiff to commit large amounts of time culling through the documents and determining if additional claims or parties should be added.

The question before the court is whether Plaintiff has been diligent in meeting the Progression Order deadlines. See Sherman, 532 F.3d at 716-17. Although the motion to amend was filed well-after the expiration of the deadline and comes on the heels of several previous amendments, the nature of the claims in this case – i.e., RICO violations – necessitated filing multiple pleadings and amendments after discovery had been analyzed. Plaintiff admits he had suspicions about the proposed new defendants' respective roles in the alleged conspiracy in the early stages of this litigation. However, Plaintiff initially had a complaint dismissed for his failure to plead the RICO allegations with sufficient specificity. (Filing No. 117). He amended his complaint in an attempt to conform with the Judge Kopf's order, and in doing so, removed parties and allegations he could not support; including removing Gayle Becker (who he now seeks to add) as a named defendant. As evidenced by Plaintiff's proposed amended complaint, Plaintiff has added numerous exhibits comprised of documents he acquired through the discovery process to support his claims against the three proposed new defendants. The vast majority of the newly cited exhibits are email exchanges, loan documents, and other internal documents otherwise unavailable to Plaintiff.

Defendants do not contend that Plaintiff had access to the documents used in support of the proposed amended complaint through other means or knew the precise facts which led to the proposed amendment. Rather, Defendants argue Plaintiff generally knew of the proposed additional defendants' alleged involvement and should have served its discovery earlier and/or moved the court to amend the Final Progression Order to allow him to add parties after conducting discovery, thereby gathering the information for asserting all claims and naming all potential defendants before the deadline for moving to amend expired.

While Plaintiff may have had suspicions about the proposed new defendants' role in the alleged scheme, he did not have a good faith belief that he possessed sufficient evidence to fulfill his obligations under the heighted pleading standard required for RICO claims. Particularly since Plaintiff's previous complaint had been dismissed for lack of specificity, the court finds Plaintiff was diligent in serving discovery and moving to file an amended complaint to add defendants only after he had enough information to support his claims.

While Plaintiff could have moved to amend the progression order, it is unlikely Defendants or the court would have agreed to an open ended extension absent good cause shown – good cause that the Plaintiff did not have until discovery progressed. Plaintiff's failure to request a continuance does not evidence lack of due diligence. Plaintiff has made the requisite showing of diligence necessary to support his untimely motion for leave to amend.

To find good cause, the court must also determine what prejudice, if any, the parties will suffer if the amendment is permitted. Defendants assert, and Plaintiff does not refute, that adding new parties will lead to additional discovery and another continuation of the trial. However, this case is currently bogged down in discovery disputes with several discovery related deadlines currently stayed until several pending motions can be resolved. (Filing No.

271).  And, although the court loathes continuing the trial in this case further, such action may be inevitable at this point irrespective of whether the court grants Plaintiff's motion to amend.  Accordingly, the court sees no real prejudice to Defendants.

Finally, Defendants argue the amendment will be futile because the claims against the proposed new defendants were not filed within the applicable statutes of limitation.  This case is extremely fact intensive and the court will not make a determination on any statute of limitation questions at the pleading stage.  Such argument is better addressed on a motion to dismiss or a motion for summary judgment.  Accordingly, the court is unwilling to find the proposed amended complaint is futile at this point in the litigation.

B.     Motions to Compel

The parties have battled over discovery during the course of this litigation.  In an attempt to resolve a number of the points of contention, the undersigned Magistrate Judge conducted a hearing on the record on July 14, 2015.  (Filing No. 235).  As a result of the hearing, the undersigned issued an order addressing the production of bank records, certain deficiencies with Telemetrix's privilege log, and the production of certain emails.  (Filing No. 237).

That hearing did not resolve all the parties' disputes.  Plaintiff has filed Motions to Compel the production of documents from two the different Defendant groups – the Telemetrix Defendants (Filing No. 277) and the Green Eagle Defendants (Filing No. 276).  The motions seek the production of certain electronic communications alleged to be in existence and numerous documents listed on the defendants' respective privilege and redaction logs.

1.     Requests for Production

Plaintiff seeks to compel Defendants Gary Brown and William Becker to respond fully to certain requests for production.  Specifically,

Gary Brown:          Requests 7, 8, 11, 13 and 18. ([Filing No. 217-23](#)).
William Becker:      Requests 8, 9, 10, 18, 28, 29 and 31. ([Filing No. 217-22](#)).

Plaintiff alleges Defendants have "misrepresented for months they have no responsive correspondence." ([Filing No. 278 at CM/ECF p. 7](#)).  Plaintiff argues he has received correspondence that is responsive to the disputed requests from other sources, claiming Gary Brown and William Becker have intentionally not produced responsive documents.   Plaintiff further alleges Defendants Brown and William Becker must have other written correspondence and their statements to the contrary are not credible.

In response, Defendants argue Telemetrix ceased as an active business in June of 2009 and all corporate documents – contained in 31 boxes – were placed in a secure storage shed in Boulder, Colorado.  And Brown and William Becker argue that their efforts to find any correspondence stored electronically have been impeded by the passage of time and what they classify as "extenuating circumstances."   ([Filing No. 290 at CM/ECF p. 6](#)).   For instance, computers used when Telemetrix was an ongoing concern have since crashed and been discarded.  Additionally, Defendant William Becker is 86 year old, lives overseas, and is in poor health; therefore, he has been able to participate in discovery only on a limited basis.   William Becker further indicated he hired an individual to help him locate communications on his current computer.   The individual was apparently successful in helping William Becker locate some responsive documents.   Those documents were apparently produced with attorney-client and work product information withheld.  ([Filing No. 290-1](#)).

The court cannot order Defendants William Becker and Gary Brown to produce documents which, despite a diligent search, cannot be found.  And the court has no ability to order the production of documents that never existed or no longer exist.  Gary Brown and William Becker each submitted a sworn affidavit describing their respective discovery efforts and asserting their good faith compliance with the discovery requests.   The court will require no more, absent a threshold evidentiary showing of spoliation or other sanctionable conduct.

2.      Privilege logs

In response to requests for production, both the Telemetrix and Green Eagle Defendants submitted privilege logs asserting either the attorney-client privilege or work product protection over various documents.  Having reviewed the privilege logs, Plaintiff argues for production of documents previously withheld based on at least one of three separate grounds: (1) the documents are not subject to any privilege; (2) certain documents should be produced based on the so-called fiduciary exception; and (3) certain documents should be produced based on the so-called fraud exception.

Under Eighth Circuit law:

A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer or his lawyer's representative, or (2) between his lawyer and his lawyer's representative, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client.

In re Bieter Co., 16 F.3d 929, 935 (8th Cir. 1994) (citing Supreme Court Standard 503(b)). The party seeking to avoid production of the communications has the burden to prove the documents qualify for the protection. Hollins v. Powell, 773 F.2d 191, 196 (8th Cir. 1985).

With respect to the work product protection, Fed. R. Civ. P. 26(b)(3)(A) provides: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representatives (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." To determine whether a document was prepared in anticipation of litigation, the court must consider whether "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Simon v. G. D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987).

a. Attorney-Client Privilege

Plaintiff contends many of the documents on the Telemetrix and Green Eagle Defendants' respective privilege logs are not privileged. The attorney-client privilege does not attach to every communication between an attorney and a client. For example, the privilege does not attach to communications that do not contain confidential information and reveal only the relationship between the parties, the reason a law firm was hired, and the steps which the law firm intends to take in discharging its obligation to the client. Diversified Industries, Inc., 572 F.2d at 603 (en banc). And documents that do not disclose the substance of the attorney-client communications, but merely indicate that discussions occurred, legal services were rendered, and documents were provided to the client are not protected by the attorney-client privilege. Burke v. Messerli & Kramer, P.A., 2010 WL 2520615, at *3 (D. Minn. June 15, 2010).

The attorney-client privilege protects a corporate employee's communication if:

(1) the communication was made for the purpose of securing legal advice;

(2) the employee making the communication did so at the direction of a corporate superior;

(3) the superior made the request so that the corporation could secure legal advice;

(4) the subject matter of the communication was within the scope of the employee's corporate duties; and

(5) the communication was not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

In re Bieter Co., 16 F.3d 929, 935 (8th Cir. 1994) (quoting Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 609 (8th Cir. 1977)). As to work product, the test is whether, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987). But "there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation." Simon, 816 F.2d at 401.

      i.      Telemetrix Defendants' Privilege Log

Documents 7-14

Plaintiff seeks production of entries 7, 8, 9, 10, 11, 12, 13, and 14 of the Telemetrix Privilege Log, (Filing No. 280-19), because those communications included Larry Becker and he is not currently represented by the same attorneys representing the Telemetrix

Defendants.[2]  Plaintiff claims that whatever privilege attached to those documents was waived when they were placed in the hands of the Telemetrix Defendants' current counsel for review.

Upon review of the documents, the communications at issue occurred while Larry Becker served as a director with Telemetrix.  Those communications between Telemetrix and attorneys representing Telemetrix are privileged documents and that privilege is not broken or waived because one of the employees or the leadership team is no longer with the company.  The privilege runs to the company and not the individual employees or officers who were involved on behalf of the company.  Moreover, these communications also involved documents and communications related to litigation between the Telemetrix and Tracy and specifically involved their strategy to responding to discovery requests in that litigation.  Such documents are clearly protected by the attorney-client privilege and that privilege was not waived because Telemetrix's new counsel has reviewed them.

Document 29

Document 29 in the Telemetrix Defendants' privilege log is identified as handwritten notes generated by Telemetrix employee "KCC" and affixed documents served by Tracy in a separate arbitration proceeding between Tracy and Telemetrix.  The Telemetrix Defendants assert these handwritten notes summarized communications by a Telemetrix employee or representative and counsel for Telemetrix in relation to the production of documents in an

_____

[2] Plaintiff's mark-up of the Telemetrix Defendants' privilege log for these contested entries states: "Neither Larry Becker nor Hartford Holdings is a client of yours; therefore, the communication was not held in confidence and no claim of privilege can be made."  (Filing No. 280-19 at CM/ECF p. 2).

arbitration held between the parties. Such information is protected from disclosure in discovery by the work product doctrine.

Document 30

Document 30 on the Telemetrix privilege log is a May 26, 2010 correspondence between attorney James Ruh and Larry Becker regarding Plaintiff's settlement demand. At the time of the communication, Larry Ruh was apparently representing both Larry Becker and Telemetrix in their litigation against Tracy. Where two or more parties are jointly represented by the same attorney in litigation, the communications between the attorney and her clients are protected by the attorney-client privilege and are subject to the work product doctrine. See Shukh v. Seagate Tech., LLC, 872 F.Supp.2d 851, 855 (D. Minn. 2012). Discussions of a settlement demand between a client and his attorney are clearly afforded work-product protection and not need to be produced.

Document 35

Document 35 is described as email communications between Dianne Larkowski, Chrys Claypool, and "Mitch B" dated August 26, 2008 and August 28, 2008 "regarding nature of claims asserted by Michael Tracy against Telemetrix regarding an alleged $467,000 promissory note." (Filing No. 280-19 at CM/ECF p. 6). Telemetrix Defendants argue the emails are protected by the work product doctrine because they reveal the thought processes of the parties. (Filing No. 280-19 at CM/ECF p. 6). The court agrees and the documents do not need to be produced.

Document 36

Document 36 is described as handwritten notes made by Telemetrix employee Chrys Claypool regarding an August 12, 2008 conversation with Dianne Larkowski concerning communications with attorney Richard Douglas. Defendants assert these notes reflect summaries of conversations with Telemetrix's attorney regarding trial strategy. The description of the documents supports Telemetrix's assertion that the notes reflect the mental impressions of attorney Douglas. Document 36 is protected attorney work product.

ii.      Green Eagle Defendants' Privilege Log

Green Eagle submitted a privilege log and two supplemental logs. (Filing Nos. 280-28, 280-29, & 280-31). Plaintiff has challenged a number of these entries based on an asserted general lack of privilege. Having reviewed the challenged entries, the court finds the documents are protected by the attorney-client privilege or the work product doctrine.

The vast majority of documents listed on Green Eagle Defendants' privilege log involve communications between the attorney for the Green Eagle Defendants and the Telemetrix Defendants and either Green Eagle and/or Telemetrix. That is, attorneys Audrey Rassmussen, Richard Douglas, and James Ruh represented both Green Eagle and Telemetrix during the time the communications in question were shared. Defendants further state these communications were in furtherance of a joint representation in which Green Eagle and Telemetrix shared a common interest – e.g., the FCC licensing issues, Plaintiff's opposition to the transfer of the license, and various other litigation proceedings with Tracy.

The court has reviewed the Green Eagle Defendants' privilege logs. Any communications between attorneys Rassmussen, Douglas, and Ruh and/or their respective

firms and the Green Eagle Defendants and Telemetrix Defendants are privileged and need not be produced.

Likewise, Plaintiff seeks a number of documents in which former employees of the Green Eagle Defendants – Mitch Bennett and Chrys Claypool – were serving as agents of Green Eagle Defendants. (See Filing No. 291-12, ¶¶ 8 and 9). Under such circumstances the communications to the agents are privileged and do not require production. See, e.g., United States v. Salamanca, 244 F. Supp. 2d 1023, 1025-26 (D.S.D. 2003) (communications made through agent of attorney or client retain attorney-client protection).

Having reviewed all of the remaining entry descriptions in the Green Eagle Defendants' log, the court finds the contested entries are subject to the attorney-client privilege and work product protection as asserted by Defendants and need not be produced.

b. Fiduciary exception

Plaintiff asserts many of the documents in both the Telemetrix and Green Eagle privilege logs are subject to fiduciary and crime-fraud exceptions to the attorney-client and work product doctrines. The fiduciary exception is a narrow exception which applies in cases where the beneficiary of a trust is seeking to gain otherwise privileged documents from the trustee of the trust. See United States v. Jicarilla Apache Nation, 131 S. Ct. 2313, 2319 (2011). The documents falling under the fiduciary exception are those created when a trustee seeks legal advice related to her fiduciary duty. Id.

Plaintiff argues for an extension of the fiduciary exception, claiming those who control a closely held business should not be able to claim the attorney-client privilege against the minority shareholders. See Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir. 1970). In Garner, stockholders brought a class action suit against a corporation and its

officers alleging common law fraud and violations of various securities laws. The stockholders sought certain documents over which the defendants were asserting the attorney-client privilege. In finding the shareholders may be entitled to review documents that would otherwise be subject to the attorney-client privilege held by the corporation, the Garner court held:

> The attorney-client privilege still has viability for the corporate client. The corporation is not barred from asserting it merely because those demanding information enjoy the status of stockholders. But where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.

Garner v. Wolfinbarger, 430 F.2d at 1103-04.

Other courts have since followed Garner and applied the fiduciary exception in certain cases – such as derivative actions – where shareholders are asserting claims against the management of the company. See In re Teleglobe Communications Corp., 493 F.3d 345, 384-85 (3d Cir. 2007). However, the Eighth Circuit has not formally adopted Garner. And even those courts that have adopted Garner note that the fiduciary exception is inapplicable to communications made during a time when the parties' interests were not aligned . . . ." Herrmann v. Rain Link, Inc., case no. 11cv1123, 2012 WL 1207232 at *6 (D. Kan. April 11, 2012).

Given the opportunity to apply the fiduciary exception in a similar case previously before this court, Judge Kopf rejected the opportunity to do so. Milroy v. Hanson, 875 F.Supp. 646, 651-52 (D. Neb. 1995) ("Milroy I"). In Milroy I, the plaintiff asserted both individual and derivative claims against the directors and majority shareholders of a closely held corporation. Plaintiff was a shareholder and a director of the corporation. Judge Kopf

determined "[Garner] has no applicability where the plaintiff stockholder asserts claims primarily to benefit himself . . . ." Milroy I, 875 F.Supp. at 651. Judge Kopf noted the derivative action was intended to primarily benefit Milroy personally and Milroy's remaining claims – for breach of fiduciary duty and RICO, were brought in his personal capacity and intended to solely benefit Milroy. Id. at 652.

Similar to the plaintiff in Milroy I, Plaintiff has brought derivative and personal claims and is suing primarily for his personal gain. In his proposed amended complaint Plaintiff asserts claims based on alleged violations of RICO, conversion, civil conspiracy, breach of fiduciary duty, unjust enrichment, a request for an accounting, and for imposition of a constructive trust. Plaintiff states he personally lost "millions of dollars in the value of Telemetrix and Convey's . . . stock value" and that he "suffered harm distinct from the Defendant shareholders of Telemetrix." (Filing No. 260-1 ¶¶ 185-86 at CM/ECF p. 84). Thus, if successful, he will personally benefit to the detriment of the majority of the remaining shareholders.[3]

Additionally, these parties have been engaged in litigation regarding the operation and management of Telemetrix since 2004. (Filing No. 291-24 at CM/ECF p. 14). The communication descriptions on the Defendants' respective privilege logs indicate that many of the communications occurred during times when Plaintiff and Defendants were at odds and pertained to litigation involving the Defendant. These communications would clearly not fall under a fiduciary exception, even if it applied to this case.

---

[3] Plaintiff alleges there is another minority shareholder, but he does not explain how the other shareholder will benefit from this lawsuit. Plaintiff is requesting an award of damages to be paid to him individually. See Filing No. 260-1, ¶¶ 170, 188, 198-99, 208-09, and 214-16.

For the foregoing reasons, the court will not apply to the fiduciary exception to this case and any attempt to discover otherwise privileged documents on this ground is overruled.

c.    Crime Fraud exception

Plaintiff also claims many documents are no longer subject to the attorney-client privilege based on the "crime fraud" exception.  The attorney-client privilege "does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime."  United States v. Zolin, 491 U.S. 554, 563 (1989).  Before any documents are either produced or reviewed *in camera*, the party seeking disclosure must make "a threshold showing 'of a factual basis adequate to support a good faith belief by a reasonable person' that the crime-fraud exception applies."  In re BankAmerica Corp. Securities Litigation, 270 F.3d 639, 642 (8th Cir. 2001)(quoting Zolin, 491 U.S. at 572).  A threshold-showing requires "that the legal advice was obtained in furtherance of the fraudulent activity and was closely related to it."  Pritchard-Keang Nam Corp. v. Jaworski, 751 F.2d 277, 283 (8th Cir. 1984).   "There must be a specific showing that a particular document or communication was made in furtherance of the client's alleged crime or fraud."  In re BankAmerica Corp., 270 F.3d at 642.  If the party makes a threshold showing, "the discretionary decision whether to conduct an *in camera* review should be made 'in light of the facts and circumstances of the particular case,' including the volume of materials in question, their relative importance to the case, and the likelihood that the crime-fraud exception will be found to apply."  Id. (quoting Zolin, 491 U.S. at 572)).

This court addressed the crime fraud exception in a second opinion in Milroy v. Hanson, 902 F. Supp. 1029 (D. Neb. 1995)("Milroy II"), wherein the plaintiff sought disclosure of documents otherwise protected by the attorney-client privilege based on the crime fraud exception.  In the complaint, the plaintiff alleged claims of fraud, breach of fiduciary duty, a derivative action for corporate waste, and a civil RICO claim against the

majority shareholders of a closely held corporation. Plaintiff sought the otherwise privileged documents on the theory that defendants sought counsel from their attorneys for the purpose of perpetuating their fraudulent scheme.

The court found the plaintiff did not make a sufficient threshold showing of fraud because he did not allege any intentional misrepresentations of truth upon which plaintiff relied. Milroy II, 902 F.Supp. at 1034-35. Judge Kopf rejected a broader definition of fraud—one that encompassed other wrongs and torts—when determining the contours of the crime-fraud exception.[4] Milroy II, 902 F.Supp. at 1033. Milroy II held that even if Plaintiff's conduct was oppressive and breached a fiduciary duty owed to the minority shareholder, Plaintiff failed to show he relied on any misrepresentation made by the defendants. Id. Accordingly, the crime-fraud exception did not apply in Milroy II.

In this case, Plaintiff asserts the crime-fraud exception applies to numerous documents identified on Defendants' respective privilege logs. But Plaintiff has not pointed to any misrepresentations made by Defendants. Rather, Plaintiff points to various "schemes" undertaken by Defendants, including eliminating other debt holders while Defendants loaned Telemetrix funds under terms favorable to Defendants and the transfer of Telemetrix assets including its FCC license. Plaintiff contends Defendants engaged in these allegedly fraudulent actions for their own personal gain. Plaintiff has pled these allegations with enough specificity to survive a motion to dismiss his operative complaint. But, that does not mean he has made a prima facie case to support common-law fraud – a hurdle Plaintiff must overcome for application of the crime-fraud exception to the attorney-client privilege. Many of the documents appear to involve Defendants acquiring advice on security agreements, bankruptcy proceedings, and the transfer of FCC licenses from Telemetrix to Green Eagle.

---

[4] Judge Kopf relied on Proposed Federal Rule of Evidence 503(d)(1) in applying the crime-fraud exception when defining the term "fraud" for the purpose of the exclusion.

But Plaintiff has wholly failed to draw a connection between these actions, however much they may support his underlying RICO claims, and any specific misrepresentations made by any Defendants to Plaintiff (or anyone else). Having failed to do so, he has not made the necessary prima facie showing to support his request for an *in camera* review of the challenged documents.

C.     Motions for Leave to Restrict

Plaintiff has filed motions for leave to restrict access to the exhibits accompanying his motion to amend (Filing No. 259) and his motion to compel, (Filing No. 279), and the reply brief in support of his motion for sanctions, (Filing No. 283). Plaintiff asserts certain exhibits require restriction because Defendants have designated those documents as confidential pursuant to the parties' stipulated protective order. After refining its motions based on the court's instruction, Plaintiff sought to have considerably fewer of its exhibits restricted or redacted. Defendants responded and seek to have only Exhibits 4, 5, 12, 16, and 37 of the proposed amended complaint (Filing No. 280), given restricted access protection. (Filing No. 280). Defendants seek restriction of Exhibits 2 and 3 of Plaintiff's Reply Brief in Support of its Motion for Sanctions. (Filing No. 284 and 296).

Having reviewed the documents and the parties' requests. the court will grant Plaintiff's motions in part and fully grant Defendants' motion to restrict.

D.     Motion for Sanctions

Plaintiff seeks sanctions pursuant to Fed. R. Civ. P. 37(b) against all Defendants for what he describes as their failure to the comply with this court's order of July 15, 2015; specifically, Green Eagle Defendants' failure to timely produce responsive documents and the Telemetrix Defendants' failure to provide an accurate and complete privilege log.

1.      Green Eagle Defendants

        The Green Eagle Defendants were instructed to provide a statement explaining their
efforts to locate certain documents, files, and bank records.  This statement was due on or
before July 23, 2015.  (Filing No. 237 at CM/ECF p. 7).  Additionally, the Green Eagle
Defendants were to supplement their production of non-privileged emails by July 20, 2015.
Defendant Green Eagle did so, but also produced approximately 1,200 additional files and
communications on August 10, 2015.  Apparently, Green Eagle anticipated producing
additional documents.

        The Green Eagle Defendants acknowledge that despite their good faith belief that
they had produced all responsive documents by July 20, 2015, they actually had not.  The
Green Eagle Defendants produced additional documents on August 6, 2015 and September
18, 2015.  Green Eagle Defendants  provide numerous explanations for their delayed
discovery responses including the heavy volume of discovery requests from Plaintiff,
financial restrictions, the time needed for Larry and Gayle Becker to cull through and
respond to Plaintiff's Requests for Production without the help of a third party vendor or
"technological staff," and "extraordinary" time required for document review to determine if
any privilege attached to the documents.  Defendants also argue Plaintiff has not exhibited
exemplary conduct during the discovery process.

        The currently proffered excuses for the Green Eagle Defendants' discovery delays
could have been raised before the court-imposed deadline passed.  Or these defendants could
have moved to continue the deadlines.  Rather than timely raise the likelihood of delay to the
court's attention, the Green Eagle Defendants chose to remain silent and explain themselves
later.  While the court is not impressed, the evidence of record does not establish that the
Green Eagle Defendants engaged in willful misconduct in causing discovery delays.  The

Green Eagle Defendants have not timely produced discovery, but they have apparently made efforts to continually supplement their discovery responses in good faith. Moreover, the timing of their production is not grossly out of step with Plaintiff's supplemental production which occurred on August 13, 2015.

Accordingly, the Green Eagle Defendants will not be sanctioned at this time, but they are cautioned that further delays based on excuses about the amount of time, money, and technology necessary to complete discovery will not be tolerated absent an effort to bring such problems to the court's attention <u>before</u> they further impede the progress of this litigation. In the interim, Green Eagle Defendants are instructed to provide Plaintiff with a statement certifying their discovery efforts as set forth below.

> 2. Telemetrix Defendants

Plaintiff has also moved for sanctions against the Telemetrix Defendants for their allegedly deficient privilege log, arguing the Telemetrix Defendants failed to properly identify the custodian of the documents. Plaintiff asks the court to enter an order that certain facts be taken as established for the purposes of this action and that the documents listed in the Telemetrix privilege log be produced. The court declines to do so.

Telemetrix produced the overwhelming majority of the documents identified on the privilege log, thereby rendering much of the discussion about the custodian of the documents moot. To the extent the Telemetrix Defendants have not yet identified who had physical access to the thirty-one (31) boxes of the produced documents, they must do so. The documents were maintained in a storage shed. The Telemetrix Defendants state Telemetrix was the custodian of the documents. But an actual person must have had a key and access to the storage shed. If they have not already done so, the Telemetrix Defendants must identify

the people who had control of the storage unit and physical access to the 31 boxes of documents. Plaintiffs are entitled to that information.

The parties are free to argue, at a later date, whether the person with the key to the shed is the "custodian" of the documents and what effect, if any, that will have on Plaintiff's claims. To the extent the Plaintiff is seeking the information he needs for laying proper foundation for the documents in question, that matter should resolve itself, if it has not already, when Plaintiff serves his Rule 30(b)(6) deposition notices and Defendants are questioned to provide the foundational information for the produced documents.

Accordingly,

IT IS ORDERED:

1) Plaintiff's Amended Motion for Leave to File Third Amended Complaint, ([Filing No. 260](#)) is granted. To avoid re-filing the complaint with all its exhibits (and associated docket restrictions), the Clerk's Office is directed to docket a "Part 2, Third Amended Complaint" to the currently filed Motion for Leave, ([Filing No. 260](#)). The unsigned Third Amended Complaint attached to [Filing No. 260](#) is deemed filed upon the entry of this order. Defendants' response shall be filed on or before November 23, 2015.

2) Plaintiff's Motion to Compel discovery from the Green Eagle Defendants, ([Filing No. 276](#)), is denied.

3) Plaintiff's Motion to Compel discovery from the Telemetrix Defendants, ([Filing No. 277](#)), is denied with the exception that

Defendant's must provide Plaintiff with the information regarding the storage of the thirty-one (31) boxes of Telemetrix documents as set forth in this order.

4)    Plaintiff's Motion for Sanctions against all Defendants, (Filing No. 255), is denied. However, the Green Eagle defendants are instructed to provide Plaintiff, on or before November 28, 2015, with a certified statement that they have, in good faith, responded to all of Plaintiff's discovery requests and produced all non-privileged, responsive documents.

5)    Plaintiff's Motions for Leave to File Restricted Access Documents, (Filing Nos. 259, 279, & 283) are granted in part and denied in part as follows:

     a.    Filing Nos. 260-99, 260-104, 260-105, 260-106, 260-107, 260-115, 260-119, 260-120, 260-121, 260-122, 260-123, 260-124, 260-132, 260-135, 260-143, 260-144, and 260-151 will remain filed as restricted access documents. Filing No. 260 – the motion itself – and all other attachments thereto will be filed on the public docket.

     b.    Filing Nos. 280-4, 280-5, 280-12, 280-16, and 280-37 will remain filed as restricted access documents. Filing No. 280 – the index itself – and all other exhibits attached thereto, will be filed on the public docket.

c.　　Filing Nos. 284-2 and 284-3 will remain restricted access. Filing No. 284 – the index itself – and all other exhibits attached thereto, will be filed on the public docket.

6)　　Defendant's Motion to Restrict, (Filing No. 296) is granted. Filing No. 282 will be filed as restricted access documents. The redacted Reply brief, (Filing No. 296-1), is deemed filed and will remain on the public docket.

7)　　On or before November 30, 2015, the parties shall contact the undersigned Magistrate Judge's chambers and schedule a status conference to discuss further case progression deadlines.

Dated this 13th day of November, 2015.

　　　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　*s/ Cheryl R. Zwart*
　　　　　　　　　　　　　　United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.